# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

DAWN TWOMEY, individually and on behalf of all others similarly situated,

                    Plaintiff,

            - against -                                   Class Action Complaint

AMERICAN TEXTILE COMPANY INCORPORATED,

                                                          Jury Trial Demanded

                    Defendant

Plaintiff Dawn Twomey ("Plaintiff") alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1.      Bedsheets and pillowcases account for at least one-third of sales in the bedding products market, with their proportion growing rapidly.

2.      Reports from industry trade group Cotton Incorporated indicate that the past two decades has seen significant shifts in what drives sales.

3.      This is because consumers are placing greater importance on quality characteristics than to brand names and appearances.

4.      Relevant quality criteria include thread count, weaving patterns, finishing, embellishments and fiber types and qualities.



5.     According to LDB Interior Textiles, the leading publication in the home fashion industry, consumers are seeking higher thread count sheets at more reasonable prices.

6.     Cotton Incorporated's Lifestyle Monitor confirmed these findings, noting that a substantial majority of consumers believe sheets with higher thread counts are higher quality, softer, and more likely to be made of cotton, the preferred fiber type.

7.     Sheets with higher thread counts provide greater comfort, durability, and longevity, because they have "more threads per square inch," compared to lower thread counts with "less threads per square inch."



8.     Surveys confirm that consumers are willing to, and do pay, more for

higher thread count sheets than lower thread count sheets.[1]

9.    As thread count increases, so does the price consumers pay, as does the quality, based on higher product ratings.

| Price Comparison (King-size single flat sheet) | | | | |
|---|---|---|---|---|
| Thread Count | Price | Price per Thread | Product Rating (stars) | Price per Star |
| 400 | $50 | $0.13 | 4.6 | $10.87 |
| 500 | $60 | $0.12 | 4.9 | $12.24 |
| 600 | $76 | $0.13 | 4.7 | $16.17 |
| 700 | $77 | $0.11 | 4.8 | $16.04 |
| 1000 | $84 | $0.08 | 4.9 | $17.14 |

*Price survey conducted 15 April 2023; ratings are on a 5-star scale based upon customer reviews at bedbathandbeyond.com*

(c) Len Penzo dot Com

10.    In prior decades, 180- or 200-thread count sheets were the standard, with more affordable options available with a 128-thread count.

11.    However, increased global trade and increased industry competition has resulted in a rapidly rising market share for high thread count sheets.

12.    This trend of "affordable luxury" allows consumers to buy higher quality products at more reasonable prices than decades ago, because of the increase in global trade.

13.    Thread count is a simple and effective way for consumers to compare sheet quality across brands to determine value for their money.

14.    To promote uniformity and prevent unfair competition, the global standards body, ASTM International, established ASTM Standard 3775, to

---

[1] ABC News, Are Shoppers Short-Sheeted by Thread Count?, Jan. 2006.

standardize the method for counting threads used in textiles.[2]

15.   This entails "Count[ing] individual warp ends (vertical threads) and filling (horizontal threads, referred to as 'wefts') picks as single units."

16.   When two yarns "are laid-in together and parallel," the number of vertical (warp) and horizontal (weft) threads woven together in a square inch are counted separately, "regardless of whether it is comprised of single or plied components."[3]

17.   For example, 150 vertical threads plus 150 horizontal threads produce a thread count of 300.

**300 Thread Count**
150 vertical + 150 horizontal
= 300 thread count



18.   However, "according to exposés from New York Magazine and Consumer Reports, many manufacturers use 'creative math' to inflate their numbers, advertising thread counts of 800, 1000, and 1200 – and leading consumers to believe they are getting a luxury product when they aren't."

19.   Industry groups such as the National Textiles Association ("NTA") and

---

[2] Standard Test Method for Warp (End) Count and Filling (Pick) Count of Woven Fabrics; see also ASTM Designation: D3775-12; ASTM D 123-03, Standard Terminology Relating to Textiles.
[3] ASTM Designation: D3775-12 at 9.1.2.

the American Textile Manufacturer's Institute ("ATMI"), and Consumer Reports, have observed how "extremely high [thread] counts are achieved by counting yarns within a ply as individual yarns, thus dramatically increasing the number of yarns in a square inch of fabric."[4]

20.    Plies are individual strands of yarn, twisted together, to form a plied yarn.

21.    Though a single-ply yarn is spun from a single strand of fiber, two-ply and three-ply yarns are spun from two and three single strands of fiber.



22.    Single-ply yarns are "The most durable threads [with a] longer lifespan," while multi-ply yarns are "smaller, less durable threads [with a] shorter lifespan."



23.    By "us[ing] thinner strands of fabric [known as plies] twisted together as if they were one," and counting each ply individually, the result is a higher thread count "more attractive to the consumer."

_____

[4] ATMI, Letter to FTC, Jan. 31, 2002.



24.   This is in stark contrast to textiles made from single-ply yarns.



25.   The use of multiple plies in single yarns requires using of thinner, lower quality fibers.

26.   The Federal Trade Commission ("FTC") confirmed that "[C]onsumers could be deceived or misled by the practice of stating an inflated thread count, achieved by multiplying the actual count by the number of plies within the yarn."[5]

27.   The U.S. International Trade Commission ("ITC") has applied and accepted these findings in its investigations on this issue.

28.   The FTC recognized this inflation of thread counts was unfair, deceptive and harmful to purchasers, who would be unable to compare similar products, because their "thread counts [] may have been calculated in two dramatically

---

[5] FTC, Letter to ATMI, Mar. 18, 2002.

different ways."[6]

29.   It noted that counting individual yarns within a ply to arrive at a total thread count was not supported by a "reasonable basis."

30.   The method proposed by the FTC for counting threads and disclosing this to consumers was consistent with the ASTM standard.

31.   Specifically, it advised that companies should count the individual plies as part of single threads, such as "300 thread count, 2 ply yarn," instead of "600 thread count," which "would likely mislead consumers about the quality of the product being purchased."

32.   To meet consumer demand for sheets with higher thread counts, American Textile Company Incorporated ("Defendant") manufactures and sells sheet sets represented with a thread count of 1,250 under the Sealy brand ("Product").

---

[6] FTC, Letter to NTA, Aug. 2, 2005.

 

33.   However, laboratory testing in accordance with ASTM D 3775 determined that 1,250 is false and misleading with respect to the thread count of Sealy sheet sets.

34.   This is because they have 57 warp yarns and 166 weft yarns per inch, for a total thread count of 233.

35.   To reach the consumer appealing figure of 1,250, Defendant counted the 19 individual filaments in each warp yarn as separate yarns and multiplied this number by 57.

36.   It then added 166 weft yarns, for a total of 1249.

37.   By counting plied yarns individually, the thread count of Sealy sheet sets is not 1,250, and is inflated by almost six times what it would be if the industry standard and FTC-endorsed method was used.

8

38.   The result was that consumers paid more money based on the expectation of a higher thread count product.

39.   The Product was of lower quality, softness, comfort, durability, and longevity than it otherwise would be if it matched the represented thread count on the labeling.[7]

40.   As a result of the false and misleading representations, the Product is sold at a premium price, approximately $60.00 for a full-size sheet set, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

## JURISDICTION

41.   Plaintiff is a citizen of Florida.

42.   Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

43.   The aggregate amount in controversy exceeds $5 million, including any statutory or punitive damages, exclusive of interest and costs.

44.   Defendant is a citizen of Pennsylvania based on its corporate formation

---

[7] Defendant sells multiple variations of its Sealy sheets, under the "Ultimate Indulgence," "Premium Comfort," "Cool Comfort" lines, promoted with a 1,250 thread count of 1,250 while its "Premium Cooling" and "Superior Cooling" lines are promoted with a thread count of 1,000. In each line, the sheets are available in sizes including king, California king, twin, queen and full. The calculation of the thread count for all varieties is based on the same method described here.

and principal place of business.

45.   The class of persons Plaintiff seeks to represent includes persons who are citizens of a different state from which Defendant is a citizen.

46.   The members of the proposed class Plaintiff seeks to represent are more than one hundred, because the Product has been sold at hundreds of retail stores in this State, such as department stores, big box stores, home furnishing stores, warehouse club stores, bedding stores and/or online to citizens of this State.

47.   The Court has jurisdiction over Defendant because it transacts business within Florida and sells its sheet sets with 1,250 thread counts to consumers within Florida from department stores, big box stores, home furnishing stores, warehouse club stores, bedding stores and/or online to citizens in this State.

48.   Defendant transacts business in Florida, through the sale of its sheet sets with 1,250 thread counts to consumers within Florida from department stores, big box stores, home furnishing stores, warehouse club stores, bedding stores and/or online to citizens in this State.

49.   Defendant has committed tortious acts within this State through the distribution and sale of its Sealy sheet sets with 1,250 thread counts to consumers within Florida from department stores, big box stores, home furnishing stores, warehouse club stores, bedding stores and/or online to citizens in this State.

50.   Defendant has committed tortious acts outside this State by

10

manufacturing, labeling, representing and selling its Sealy sheet sets with 1,250 thread counts in a manner which causes economic injury to consumers within this State by misleading them as to its attributes, characteristics, contents, amount and/or quality, by regularly doing or soliciting business, or engaging in other persistent courses of conduct to sell its Sealy sheet sets with 1,250 thread counts to consumers in this State, and/or derives substantial revenue from the sale of its Sealy sheet sets with 1,250 thread counts to consumers in this State.

51. Defendant has committed tortious acts outside this State by manufacturing, labeling, representing and selling its Sealy sheet sets with 1,250 thread counts in a manner which causes economic injury to consumers within this State by misleading them as to its attributes, characteristics, contents, amount and/or quality, by regularly doing or soliciting business, or engaging in other persistent courses of conduct to sell its Sealy sheet sets with 1,250 thread counts to consumers in this State, such that it expects or should reasonably expect such acts to have consequences in this State and derives substantial revenue from interstate or international commerce.

**VENUE**

52. Plaintiff resides in Pinellas County.

53. Venue in the Tampa Division of this District is based on Plaintiff's residence in Pinellas County.

11

54.   Venue is based on Plaintiff's residence in Pinellas County because a substantial or the entire part of the events or omissions giving rise to her claims occurred in Pinellas County, including her purchase of the Product based on the representations and omissions identified here.

55.   Venue is based on Plaintiff's residence in Pinellas County because this is where her causes of action accrued, including her purchase, payment of money for or towards, use and/or consumption of the Product.

56.   Plaintiff purchased, paid money for or towards, used and/or consumed the Product in reliance on the representations and omissions identified here in Pinellas County.

57.   Plaintiff first became aware the representations and omissions were false and misleading in Pinellas County.

## PARTIES

58.   Plaintiff Dawn Twomey is a citizen of Pinellas County, Florida.

59.   Defendant American Textile Company Incorporated is a Pennsylvania corporation with a principal place of business in Pennsylvania.

60.   Defendant is one of the largest textile manufacturers in the United States.

61.   Defendant manufacturers bedding products for dozens of brands, including Sealy.

62.   Sealy is known worldwide for its premium mattresses.

63.   Consumers seeing Sealy sheets will expect similarly high levels of quality based on its reputation.

64.   Plaintiff is like most purchasers of all consumer goods, who sees things advertised with prominent figures and believes "the higher, the better."

65.   Plaintiff believed the thread count of sheets corresponded to quality, and that a higher thread count meant a higher quality set of sheets, in terms of softness, durability, and comfort.

66.   Plaintiff expected the Sealy sheet promoted as having a thread count of 1,250, would provide greater comfort, durability, longevity and breathability than sheets advertised with a lower thread count, or no thread count at all.

67.   Plaintiff read "1250" next to "Thread Count" on the label and/or other marketing materials.

68.   Plaintiff read, saw and relied on the package's statements of "1250" next to "Thread Count" on the label and/or in other marketing materials.

69.   Plaintiff believed and expected the thread count promised on the label and/or in marketing materials was the thread count of the Product she was buying.

70.   Plaintiff was not aware of the industry standard methods for calculating thread counts or the FTC endorsement of that method but believed that any numbers presented to her had a reasonable basis in fact.

71.   Plaintiff did not expect such numbers to be inflated by almost six times

what they would be if the standard method for calculating thread count was used.

72.   Plaintiff purchased Sealy sheets promoted as having a thread count of 1,250, made by Defendant, with the labeling and marketing identified here, at department stores, big box stores, home furnishing stores, warehouse club stores, bedding stores and/or online, in Pinellas County, between December 2019 and December 2023.

73.   Plaintiff bought the Product at, around or exceeding the above-referenced price.

74.   Plaintiff paid more for the Product than she would have had she known its thread count was almost six times higher than it would have been if standard methods for calculating thread counts were used.

75.   The Product was worth less than what Plaintiff paid, and she would not have bought it or paid as much absent Defendant's false and misleading statements and omissions.

## CLASS ALLEGATIONS

76.   Plaintiff seeks to represent the following class:

> All persons in Florida who purchased Sealy
> sheet sets made by Defendant advertised as
> having a thread count of 1,250, in Florida,
> during the statutes of limitations for each
> cause of action alleged.

77.   Excluded from the Class are (a) Defendant, Defendant's board members,

14

executive-level officers, and attorneys, and immediate family members of any of the foregoing persons, (b) governmental entities, (c) the Court, the Court's immediate family, and Court staff and (d) any person that timely and properly excludes himself or herself from the Class.

78.   Common questions of issues, law, and fact predominate and include whether Defendant's representations and omissions were and are misleading and if Plaintiff and class members are entitled to damages.

79.   Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

80.   Plaintiff is an adequate representative because her interests do not conflict with other members.

81.   No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

82.   Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

83.   The class is sufficiently numerous and likely includes several thousand people.

84.   This is because Defendant sells its Sealy sheet sets promoted as having a thread count of 1,250 to consumers from hundreds of stores and online in the State

Plaintiff is seeking to represent.

85.   Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

## CAUSES OF ACTION

### COUNT I
Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"),
Fla. Stat. § 501.201, *et seq.*

86.   Plaintiff incorporates by reference paragraphs 1-40.

87.   The purpose of FDUTPA is "To protect the consuming public…from those who engage in…deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

88.   This includes "making state consumer protection and enforcement consistent with established policies of federal law relating to consumer protection." Fla. Stat. § 501.202(3).

89.   FDUTPA considers any "unfair or deceptive acts or practices in the conduct of any trade or commerce [to be] unlawful." Fla. Stat. § 501.204(1).

90.   Such "unfair or deceptive acts or practices" must be construed so that "due consideration and great weight shall be given to the interpretations of the FTC and the federal courts relating to [the FTC Act,] 15 U.S.C. § 45(a)(1)." Fla. Stat. § 501.204(2).

91.   Violations of FDUTPA can be based on other laws and standards related

to consumer deception. Fla. Stat. § 501.203(3).

92.   An FDUTPA violation occurs whenever "Any rules promulgated pursuant to the FTC Act, 15 U.S.C. § 41 *et seq*." are violated. Fla. Stat. § 501.203(3)(a).

93.   An FDUTPA violation occurs whenever "The standards of unfairness and deception set forth and interpreted by the Federal Trade Commission ('FTC') or the federal courts" relating to the FTC Act are violated. Fla. Stat. § 501.203(3)(b).

94.   An FDUTPA violation occurs whenever "Any law, statute, rule, regulation, or ordinance which proscribes…unfair, deceptive, or unconscionable acts or practices" is violated. Fla. Stat. § 501.203(3)(c).

95.   In considering whether advertising is misleading in a material respect, the FTC Act recognizes that the effect of advertising includes not just representations made or suggested by words and images, "but also the extent to which [it] fails to reveal facts material in the light of such representations." 15 U.S.C. § 55(a)(1).

96.   The FTC has stated that all advertisements and marketing must have a reasonable basis in fact.

97.   The FTC stated that the calculation of a product's thread count which counts plied yarns individually, as exists here, does not appear to have a reasonable basis in fact.

98.   The FTC endorsed the industry standard method of calculating thread

counts, under which the Sealy 1,250 thread count sheet sets would be close to twenty percent of what was advertised.

99.  Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

100.  This is because consumers prefer sheet sets with higher thread counts for reasons including durability, quality, softness and comfort.

101.  The marketing of the sheet sets with thread counts of 1,250 violated the standards of unfairness and deception set forth and interpreted by the FTC, because counting plied yarns individually resulted in a thread count that was significantly inflated. Fla. Stat. § 501.203(3)(b).

102.  The marketing of the sheet sets with thread counts of 1,250 violated laws, statutes, rules, regulations, or ordinances "which proscribe[]…unfair, deceptive, or unconscionable acts or practices," because the counting of individual plied yarns was a deceptive act, thereby violating FDUTPA. Fla. Stat. § 501.203(3)(c); 15 U.S.C. § 45(a)(1)

103.  The labeling of the Product violated FDUTPA because counting individual plied yarns was an unfair or deceptive act or practice in the sale of sheet sets. Fla. Stat. § 501.204(1).

104.  The labeling of the Product violated FDUTPA because this State recognized that "in construing subsection (1), due consideration and great weight

shall be given to the interpretations of the [FTC] [] relating to s. 5(a)(1) of the FTC Act." Fla. Stat. § 501.204(1).

105. The FTC affirmed that since all marketing and advertisements must have a reasonable basis, and because the counting of individual plied yarns in the manner described here appears to lack such a basis, the practice employed by Defendant with its 1,250 thread count sheet sets is deceptive and unfair to consumers.

106. Plaintiff believed the thread count of the Sealy sheet set, marketed as 1,250, was accurate or reasonably accurate, because she had no basis to know of industry practices which counted plied yarns individually, resulting in inflated thread counts.

107. Plaintiff paid more for the Product and would not have paid as much if she knew that its thread count was significantly inflated over what it would be if industry standard and FTC-endorsed methods were used.

108. Plaintiff seeks to recover for economic injury and/or loss she sustained based on the misleading labeling, marketing and packaging of the Sealy sheet sets promoted as having a thread count of 1,250, a deceptive practice under FDUTPA, by paying more for it than she otherwise would have.

109. Plaintiff will produce evidence showing how she and consumers paid more than they otherwise would have paid for the Product, relying on Defendant's representations and omissions, using statistical and economic analyses, hedonic

regression, hedonic pricing, conjoint analysis and other advanced methodologies.

## COUNT II
### False and Misleading Adverting,
### Fla. Stat. § 817.41

110. Plaintiff incorporates by reference paragraphs 1-40.

111. Defendant made misrepresentations and omissions of material fact, that its Sealy sheet sets had a thread count of 1,250, through its advertisements and marketing in various forms of media, product packaging and descriptions, and/or targeted digital advertising.

112. Defendant failed to truthfully disclose that the Sealy sheet sets had a true thread count roughly twenty percent of the advertised figure, and that the number promoted in the marketing and labeling was arrived at using methods which are not industry standard and results in inflated numbers.

113. Defendant falsely and/or deceptively stated and/or implied the Sealy sheet sets had a thread count of 1,250 even though this figure was reached by counting plied yarns individually.

114. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions, because thread count is one of the most important factors considered when buying sheet sets.

115. Defendant knew these statements and omissions were false and/or misleading.

116. Defendant intended for consumers to rely on its false statements and omissions for the purpose of selling the Sealy sheet sets advertised with a thread count of 1,250.

117. Plaintiff and class members did in fact rely upon these statements and omissions.

118. Reliance was reasonable and justified because of the public trust placed in companies selling bedding products and especially under the Seay brand, with consumers expecting them to be marketed truthfully and in a non-misleading manner.

119. Plaintiff paid more for the Sealy sheet sets marketed with a thread count of 1,250, as she would not have paid as much or bought it if she knew that its thread count was significantly less than advertised, and arrived at by using methods which are not used by others in the bedding industry, resulting in highly inflated thread counts.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Awarding monetary damages and interest;

3. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

4. Other and further relief as the Court deems just and proper.

Dated:   January 29, 2024

Respectfully submitted,

/s/ William Wright
The Wright Law Office P.A.
515 N Flagler Dr Ste P300
West Palm Beach FL 33401
(561) 514-0904
willwright@wrightlawoffice.com

*Notice of Lead Counsel Designation:*

*Lead Counsel for Plaintiff*

William Wright

The Wright Law Office P.A.

*Counsel for Plaintiff*